Hassoun v. Searls

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2020
No. 20-2056-cv

**ADHAM AMIN HASSOUN,**
*Petitioner-Appellee,*

v.

**JEFFREY SEARLS, IN HIS OFFICIAL CAPACITY AS ACTING ASSISTANT
FIELD OFFICE DIRECTOR AND ADMINISTRATOR OF THE BUFFALO
FEDERAL DETENTION FACILITY,**
*Respondent-Appellant.*

On Motions to Dismiss and to Vacate the District Court's Decisions
and Order Granting Judgment to Appellee, and to Vacate the
Opinion Granting the Government's Motion for a Stay

SUBMITTED: SEPTEMBER 4, 2020
DECIDED: SEPTEMBER 22, 2020

Before:      CABRANES, SULLIVAN, and MENASHI, *Circuit Judges.*

On July 21, 2020, the government removed Adham Amin
Hassoun from the United States. The removal mooted the
government's appeal of an order of the U.S. District Court for the

Western District of New York (Wolford, J.), directing the government to release Hassoun from immigration detention. The government now moves to dismiss the appeal as moot and requests vacatur of the district court's decisions related to 8 C.F.R. § 241.14(d), a regulation that the government had invoked to detain Hassoun. Hassoun opposes the government's request for vacatur and separately requests vacatur of this court's opinion granting the government's motion for a stay pending appeal. After concluding that the case is moot and considering the equities, we **DENY** Hassoun's motion to vacate this court's opinion granting the government's motion for a stay pending appeal, and we **GRANT** the government's motion to **VACATE** the district court's decisions related to 8 C.F.R. § 241.14(d), **DISMISS** the appeal as moot, and **REMAND** to the district court with instructions to dismiss Hassoun's challenge to his detention under 8 C.F.R. § 241.14(d) as moot.

————————

Jonathan Hafetz (Brett Max Kaufman, Charles Hogle, Judy Rabinovitz, Celso Perez, *for* the American Civil Liberties Union Foundation, New York, NY; Scott Michelman, Arthur B. Spitzer, *for* the American Civil Liberties Union Foundation of the District of Columbia, Washington, DC; A. Nicole Hallett, *for* the Mandel Legal Aid Clinic, University of Chicago Law School, Chicago, IL; Jonathan Manes, *for* the Roderick & Solange MacArthur Justice Center, Chicago, IL, *on the brief*), *for Petitioner-Appellee*.

Steven A. Platt, Counsel for National Security (Ethan P. Davis, Acting Assistant Attorney General; William C. Peachey, Director; Timothy M. Belsan, Chief; John J.W.

Inkeles, Counsel for National Security, *for* the Office of Immigration Litigation, United States Department of Justice, Washington, DC; Daniel B. Moar, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *on the brief*), *for Respondent-Appellant*.

Stephen I. Vladeck, Austin, TX, *for amicus curiae Stephen I. Vladek*.

---

MENASHI, *Circuit Judge*:

On June 29, 2020, the U.S. District Court for the Western District of New York ordered the government to release Adham Amin Hassoun from immigration detention. *Hassoun v. Searls*, No. 19-CV-370, 2020 WL 3496302, at \*19 (W.D.N.Y. June 29, 2020). While the government's appeal of that order was pending, the government "successfully removed Hassoun pursuant to his final order of removal from the United States to a third county." Appellant's Notice of Removal, *Hassoun v. Searls*, 968 F.3d 190 (2d Cir. 2020) (No. 20-2056), ECF No. 72.

The government now moves to dismiss this appeal as moot and requests vacatur of the district court's decisions related to 8 C.F.R. § 241.14(d), a regulation that the government had invoked as authority for Hassoun's continued detention. *See, e.g., Hassoun v. Searls*, 427 F. Supp. 3d 357 (W.D.N.Y. 2019). Hassoun does not oppose the government's motion to dismiss the appeal as moot but opposes vacatur of the district court's decisions related to 8 C.F.R. § 241.14(d). In addition, Hassoun requests vacatur of this court's opinion granting the government's motion for a stay pending appeal.

"When a civil case becomes moot pending appellate adjudication, 'the established practice in the federal system is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 71 (1997) (alterations omitted). Federal courts follow this practice "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950). Because the district court's decisions related to 8 C.F.R. § 241.14(d) could have legal consequences in future litigation between the parties, those decisions should be vacated so that "the rights of all parties are preserved." *Id*. at 40.

In contrast, this court's opinion granting the government's motion for a stay pending appeal does not warrant vacatur because it does not have legal consequences for the parties. A decision concerning a stay is not a final adjudication on the merits of an appeal and lacks preclusive effect. We therefore deny Hassoun's motion to vacate this court's opinion granting the government's motion for a stay pending appeal, and we grant the government's motion to vacate the district court's decisions related to 8 C.F.R. § 241.14(d), dismiss the appeal as moot, and remand to the district court with instructions to dismiss Hassoun's challenge to his detention under 8 C.F.R. § 241.14(d) as moot.

## BACKGROUND

In 2003, Hassoun was ordered removed from the United States for violating the terms of his non-immigrant visa. Before he could be deported, Hassoun was taken into custody on federal criminal charges of conspiracy to murder, kidnap, and maim persons overseas; of conspiracy to provide material support to terrorists; and of

4

providing material support to terrorists. He was convicted of those charges and sentenced principally to a 188-month term of imprisonment.

Upon his release from prison in October 2017, Hassoun was placed in immigration detention under 8 U.S.C. § 1231(a)(6), pending his removal from the United States. He then petitioned for a writ of habeas corpus. The district court granted Hassoun's petition and ruled that the government could not continue detaining Hassoun under 8 U.S.C. § 1231(a)(6) because there was not a significant likelihood that the government would remove him from the United States in the reasonably foreseeable future. *Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *1, *6 (W.D.N.Y. Jan. 2, 2019) (applying the framework of *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)). Subsequently, the government invoked 8 C.F.R. § 241.14(d) and 8 U.S.C. § 1226a as additional authorities to allow it to continue detaining Hassoun.

In March 2019, Hassoun filed another petition for a writ of habeas corpus, challenging his continued detention under 8 C.F.R. § 241.14(d) and 8 U.S.C. § 1226a. In December 2019, the district court held that "8 C.F.R. § 241.14(d) is … a legal nullity that cannot authorize" Hassoun's continued detention, *Hassoun*, 427 F. Supp. 3d at 372, and subsequently ordered the government to release him, *Hassoun*, 2020 WL 3496302, at *19. The district court also denied the government's request for a stay pending appeal. *Id*.

The government appealed the district court's decisions related to 8 C.F.R. § 241.14(d) to this court and moved for an administrative stay and a stay pending appeal. *See* Emergency Mot. for Stay Pending Appeal, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 9. This court

entered an administrative stay until July 15, so that the government's motion for a stay pending appeal could be considered by a three-judge panel. Order, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 16. On July 13, before the administrative stay expired, the court entered a temporary extension of the administrative stay to ensure that it had adequate time to consider the government's motion. Order, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 41. On July 16, after due consideration, the court granted the government's motion for a stay pending appeal and noted that "[a]n opinion will be forthcoming." Order, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 60. That opinion was published on July 30. *Hassoun*, 968 F.3d 190.

During the court's consideration of the government's motion, the government periodically updated the court on the status of its attempts to remove Hassoun. On July 13, the government filed a notice claiming "material progress in achieving [Hassoun's] removal from the United States" and that "[a]bsent an extraordinary or unforeseen circumstance, the government intends to remove [Hassoun] from the United States by July 27, 2020." Consented Mot. to Extend Administrative Stay, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 43. On July 20, the government again notified the court that "U.S. Immigration and Customs Enforcement (ICE) intends to remove … Hassoun from the United States to a third country during the week of July 20, 2020," and, for the first time, that "[t]he U.S. government has reached an agreement with a third country to accept Petitioner upon his removal from the United States." Appellant's Notice of Intent to Remove, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 67. Finally, on July 22, the government filed a notice that Hassoun had been removed from the United States the previous day. Appellant's Notice of Removal, *Hassoun*, 968 F.3d 190 (No. 20-2056),

6

ECF No. 72; *see also* Pet'r-Appellee's Notice of Removal, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 71.

On August 5, following Hassoun's removal, the government moved to dismiss this appeal as moot and requested that we vacate the district court's decisions related to 8 C.F.R. § 241.14(d). Appellant's Mot. to Dismiss and to Vacate, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 82 ("Gov't Mot."). Though Hassoun agrees with the government that the appeal is now moot, he opposes vacatur of the district court's decisions. Pet'r-Appellee's Opp'n to Resp't's Mot. to Vacate, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 86 ("Hassoun Opp'n"). In addition, Hassoun filed his own motion, requesting that the court vacate its opinion granting the government's motion for a stay pending appeal. Pet'r-Appellee's Mot. to Vacate, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 87 ("Hassoun Mot.").

We have jurisdiction to consider the parties' motions to dismiss and for vacatur for the reasons set out in our opinion granting the government's motion for a stay pending appeal. *See Hassoun*, 968 F.3d at 195-98. Both parties' motions raise the question of mootness. "[W]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (quoting *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994)). Thus, "[w]henever mootness occurs, the court … loses jurisdiction over the suit, which therefore must be dismissed." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of Watervliet*, 260 F.3d 114, 118-19 (2d Cir. 2001). Of course, we have jurisdiction to resolve questions about our jurisdiction. *United States v. Shipp*, 203 U.S. 563, 573 (1906); *Roth v. McAllister Bros.*, 316 F.2d 143, 145 (2d Cir. 1963) ("[A] tribunal always possesses jurisdiction to determine its jurisdiction.").

## DISCUSSION

No one disputes that this case has become moot, given that Hassoun has been removed from the United States. *See, e.g.*, *Nieto-Ayala v. Holder*, 529 F. App'x 55, 55 (2d Cir. 2013) (summary order). But the parties disagree about when that occurred. The government claims that "this case was mooted [on July 21] after a third country agreed to allow Hassoun to remain within its borders and when the government in turn effectuated its mandatory obligation to remove him." Gov't Mot. 2. Hassoun, on the other hand, claims that this case "became practically moot upon the government's July 13 notice that [Hassoun's] removal would take place '[a]bsent an extraordinary or unforeseen circumstance' by July 27." Hassoun Mot. 6.

The parties also disagree about the consequences of mootness. The government requests vacatur of the district court's decisions related to 8 C.F.R. § 241.14(d) because it is now unable to challenge those rulings. Hassoun opposes vacatur of the district court's decisions related to 8 C.F.R. § 241.14(d), arguing that "[t]he government's active role in mooting this case makes vacatur unwarranted." Hassoun Opp'n 8. He also requests vacatur of this court's opinion granting the government's motion for a stay pending appeal on the ground that the case was practically moot when the government's motion was granted.

## I

Hassoun contends that the government's appeal was "practically moot" on July 13, Hassoun Mot. 1, when the government filed a consented motion for a stay claiming "material progress in achieving [Hassoun's] … removal from the United States," Consented Mot. to Extend Administrative Stay, *Hassoun*, 968 F.3d 190 (No. 20-

8

2056), ECF No. 43. The government had previously represented to the district court that it planned to remove Hassoun, but those prior plans did not materialize. In response to Hassoun's first habeas petition, for example, the government told the district court that Hassoun's removal was "significantly likely in the reasonably foreseeable future" and that it had found a country "willing to issue travel documents" to Hassoun. *Hassoun*, 2019 WL 78984, at *1-2. After that representation, however, "[o]bstacles … ar[o]se[]" and Hassoun was not removed. *Id.* at *2.

Regardless of the weight given to the government's representation on July 13, the controversy between the parties remained live as long as Hassoun was detained. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). Hassoun's habeas petition requested that "the government … release Mr. Hassoun immediately." Am. Verified Pet. at 20, *Hassoun v. Searls*, 2020 WL 3496302 (No. 19-CV-370), ECF No. 13. Hassoun was still detained on July 13—and he remained so until July 21. Because Hassoun sought release from custody and the government was unwilling to release him, a court still could grant effectual relief and the case was not moot. Indeed, the government sought to continue detaining Hassoun despite the district court's order that he be released and filed a motion for a stay pending appeal in this court, and Hassoun opposed that motion.[1]

---

[1] Although the parties agreed to extend the briefing schedule on the motion, neither party abandoned its position with respect to the lawfulness of Hassoun's detention or the propriety of a stay pending appeal. In a case of even greater agreement between the parties, the en banc D.C. Circuit

Hassoun's argument draws on the Supreme Court's decision in *Zadvydas*, which interpreted 8 U.S.C. § 1231(a)(6) to allow the government to hold an alien in confinement "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Under that framework, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing" for 8 U.S.C. § 1231(a)(6) to continue to authorize the detention. *Id.* Assuming that Hassoun had provided "good reason to believe that there [was] no significant likelihood of removal in the reasonably foreseeable future," we doubt that the government's unsworn assertion that it expected to be able to remove Hassoun—in the context of this case, in which it had made such assertions before—amounts to the sort of "evidence" the *Zadvydas* Court would have found "sufficient to rebut that showing."[2] But we need not resolve that question for two reasons.

recently held that that a criminal case was not moot despite the fact that "the Government has filed a motion to dismiss and Petitioner (defendant below) consents" because "there remains a case or controversy unless and until that motion is granted by the District Court." *In re Flynn*, No. 20-5143, 2020 WL 5104220, at *1 n.2 (D.C. Cir. Aug. 31, 2020). Here, there remained a case or controversy unless and until Hassoun obtained the release he sought in his petition and the government no longer sought to detain him.

[2] The government acknowledges that in its July 13 filing, it "did not represent to the Court that removal was a certainty." Appellant's Opp'n to Appellee's Mot. To Vacate at 6, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 107. The government also acknowledges that it had previously represented similar confidence that it would likely remove Hassoun in 2018 and 2019, but "those efforts did not succeed at that time." *Id.* at 10.

First, even if the government were detaining Hassoun pursuant to 8 U.S.C. § 1231(a)(6), and even if it had established a significant likelihood of Hassoun's removal in the reasonably foreseeable future, that would not render the case moot. The case would remain live as long as the petitioner was detained and the government refused to grant his release. A significant likelihood of removal would affect only the merits question of whether continued detention under § 1231(a)(6) was properly authorized. A case does not become moot when an intervening change merely affects the parties' arguments on the merits without depriving the court of the ability to provide effectual relief to the prevailing party.

Second, the government was not detaining Hassoun pursuant to § 1231(a)(6), and therefore the legality of its continued detention did not depend on whether there was a significant likelihood of removal in the reasonably foreseeable future. Rather, the government continued to detain Hassoun pursuant to 8 C.F.R. § 241.14(d), which authorizes the detention of removable aliens based on a showing of security or terrorism concerns. In fact, the government did not appeal the ruling, made on Hassoun's first habeas petition, that 8 U.S.C. § 1231(a)(6) did not authorize Hassoun's continued detention. *See Hassoun*, 2020 WL 3496302, at \*4; *see also Hassoun,* 2019 WL 78984, at \*8.

It is true that the government "reserve[d] the right to re-detain [Hassoun] pursuant to § 1231(a)(6) in the event 'there again become[s] a significant likelihood of his removal in the reasonably foreseeable future.'" *Hassoun*, 2020 WL 3496302, at \*4 n.5. But the government never sought to "re-detain" Hassoun under § 1231(a)(6), and in any event that development would not moot the appeal before this court,

which concerned only whether detention was authorized under 8 C.F.R. § 241.14(d).

When this court resolved the government's motion for a stay pending appeal on July 16, there was still a live case concerning whether the government was lawfully permitted to detain Hassoun under 8 C.F.R. § 241.14(d). The court could, and did, provide "effective relief" in the form of an order permitting continued detention pending resolution of the appeal. *Cap. Commc'ns Fed. Credit Union v. Boodrow* (*In re Boodrow*), 126 F.3d 43, 47 (2d Cir. 1997).

Recognizing the lack of actual mootness,[3] Hassoun offers a different argument: that even if this court's order on the stay motion was proper when it was issued, the court should not have subsequently issued an opinion explaining that order because the government had already removed Hassoun from the United States by the time the opinion was published.

When we granted the government's motion for a stay pending appeal on July 16, we noted that "[a]n opinion will be forthcoming." Order, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 60. This is a common practice.[4] To resolve the motion, we were required to "bring

---

[3] *See* Hassoun Mot. 11 (admitting that, at least as a "formal matter, the government's appeal was not moot until the government relinquished custody of [Hassoun] by freeing him in another country on July 2[1]").

[4] *See, e.g.*, *Yang v. Kosinski*, 805 F. App'x 63, 65 (2d Cir. 2020) (summary order) (issuing an order and noting that while "[t]he mandate shall issue forthwith," "[a]n opinion of this Court will follow explaining its reasoning in further detail"); *United States v. Watkins*, 940 F.3d 152, 157 (2d Cir. 2019) (noting that "we entered an order denying Watkins's motion for bail, 'with an opinion forthcoming'"); *Chevron Corp. v. Naranjo*, No. 11-1150, 2011 WL 4375022, at *1 (2d Cir. Sept. 19, 2011) (dissolving an injunction with an opinion to "follow in due course"); *In re DBSD N.A., Inc.*, 627 F.3d 496, 497

12

considered judgment to bear" on the four factors that govern the issuance of a stay. *Nken v. Holder*, 556 U.S. 418, 427, 434 (2009); *see Hassoun*, 968 F.3d at 195 (considering the *Nken* factors). Because the court's opinion explained its previous order—which addressed a live case or controversy—the opinion was not advisory. *See Ex parte Quirin*, 317 U.S. 1, 1, 20 (1942) (issuing an opinion to explain a prior order in a habeas case that had become moot several months before the opinion issued); *see also Romeu v. Cohen*, 265 F.3d 118, 122 (2d Cir. 2001) (explaining a prior order that denied a Puerto Rico resident's request for a New York absentee ballot even though the election took place and mooted the case months before the opinion issued); *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 839 F.2d 1296, 1299-1301 & n.1 (8th Cir. 1988) (explaining a prior order that permitted an election to proceed months after the election took place).[5]

---

(2d Cir. 2010) (issuing an order and noting that "[a]n opinion will follow in due course"); *Santiago v. Rumsfeld*, 403 F.3d 702, 702 (9th Cir. 2005) (resolving an "urgent motion for injunction pending appeal" while noting that "[a]n opinion or opinions will follow in due course"); *Wisconsin v. Weinberger*, 736 F.2d 438, 438 (7th Cir. 1984) (vacating an injunction while noting that "an opinion … will follow in due course").

[5] Hassoun also suggests that the government's motion for a stay pending appeal was already moot by July 16 because the government had obtained relief in the form of an administrative stay. Hassoun Mot. 8; Pet'r-Appellee's Reply in Supp. of Mot. to Vacate at 5, *Hassoun*, 968 F.3d 190 (No. 20-2056), ECF No. 111. But "an appellate court's power to hold an order in abeyance while it assesses the legality of the order" is constrained by the four factors that govern the issuance of a stay. *Nken*, 556 U.S. at 426, 434. Accordingly, an administrative stay—which in this case issued only to provide time for a motions panel to receive and to decide the government's motion for a stay pending appeal—cannot be employed to grant a party effectual relief. It would arguably be an abuse of discretion for a motions

13

## II

The government's appeal is now moot because Hassoun has been removed from the United States. Accordingly, the "issues presented are no longer 'live'" and "the parties lack a legally cognizable interest in the outcome" of this appeal. *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

When a case becomes moot on appeal, "'[t]he established practice … in the federal system … is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Arizonans for Off. English*, 520 U.S. at 71; *see Bragger v. Trinity Cap. Enter. Corp.*, 30 F.3d 14, 17 (2d Cir. 1994). "The reason for this is … to avoid giving preclusive effect to a judgment never reviewed by an appellate court." *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1435 (2d Cir. 1992). To determine whether vacatur is appropriate, we must "look at the equities of the individual case." *Staley v. Harris County*, 485 F.3d 305, 312 (5th Cir. 2007); *see U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994).

Vacatur is appropriate "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *Munsingwear*, 340 U.S. at 41. It is "generally appropriate where mootness arises through 'happenstance,' or the unilateral action of the party prevailing below, but not where the appellant moots the case by settlement or withdrawing the appeal." *Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44, 53-54 (1st Cir. 2002) (internal citations omitted).

---

panel to decline to decide a pending motion because an administrative stay is in place.

14

"These end points mark the extremes; for gray-area cases such as this one, the result depends on particular circumstances." *Id*. at 54.

## A

Hassoun claims that "[t]he government's active role in mooting this case makes vacatur [of the district court's decisions] unwarranted." Hassoun Opp'n 8. But "not all actions taken by an appellant that cause mootness necessarily bar vacatur of the district court's judgment." *Russman*, 260 F.3d at 122. An appellant's actions "constitute 'forfeiture' of the benefit of vacatur" if the appellant voluntarily acts with an "inten[t] that the appeal become moot." *Id*. On the other hand, "conduct that is voluntary in the sense of being non-accidental, but which is entirely unrelated to the lawsuit, should not preclude our vacating the decision below." *Id*.; *see N.J. Carpenters Health Fund v. Novastar Mortg., Inc.*, 753 F. App'x 16, 21 (2d Cir. 2018) (summary order) (granting vacatur, in part, because an appellant did not act "with the purpose of mooting its appeal"); *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 48 (2d Cir. 2006) (granting vacatur where "this appeal has been mooted through no fault or machination" of the appellant); *Leser v. Berridge*, 668 F.3d 1202, 1210 (10th Cir. 2011) (granting vacatur, despite the appellant and moving party having mooted the case, because she lacked "the motive of vacating the district court order").

"[T]he touchstone of our analysis" is "[t]he appellant's fault in causing mootness." *FDIC v. Regency Sav. Bank, F.S.B.*, 271 F.3d 75, 77 (2d Cir. 2001). "If the appellant has taken action depriving us of continuing jurisdiction over the case, under circumstances that suggest an intention to do so, the appellant is deemed to have

15

forfeited the benefit of the equitable remedy of vacatur of the judgment of the lower court." *Id*.

In this case, however, we conclude that the government's appeal was "frustrated by the vagaries of circumstance," *U.S. Bancorp Mortg. Co.*, 513 U.S. at 25, and the removal of Hassoun to a third country was "the natural and apparently long-anticipated result" of the government's immigration enforcement efforts, *Russman*, 260 F.3d at 123. Under 8 U.S.C. § 1231(a)(1)(A) and (4)(A), the government is required to remove an alien who has been ordered removed "within a period of 90 days." Based on these statutory provisions, the government argues that "the mootness-causing action," Hassoun's removal, resulted "from the typical progression of events." *Houston Chron. Pub. Co. v. City of League City*, 488 F.3d 613, 620 (5th Cir. 2007); *see Catawba Riverkeeper Found. v. N.C. Dep't. of Transp.*, 843 F.3d 583, 591 (4th Cir. 2016) (holding that although a state agency took an action that mooted the case, "that result was a fait accompli following the local planning agency's decision" that the state agency was legally obligated to implement, and therefore the state agency "did not act voluntarily to moot this case"); *AT&T Commc'ns of S.W. v. City of Austin*, 235 F.3d 241, 244 (5th Cir. 2000) (noting that a statute had "drained this case of life" by making mootness "a fait accompli" and that the statute rather than the city's "responses to it" caused the mootness); *see also Associated Gen. Contractors of Conn. v. City of New Haven*, 41 F.3d 62, 67 (2d Cir. 1994) ("A party should not suffer the adverse *res judicata* effects of a district court judgment when it is denied the benefit of appellate review through no fault of its own.").

This case resembles others in which the appellate courts have determined that a party's actions did not preclude vacatur. For example, in *Kerkhof*, the appellant "mooted the case unilaterally …

16

based on a perceived legal obligation" to compensate a former employee under a stock option award contract. 282 F.3d at 54. Because the appellant relied on "the express language" of its legal obligation—the contract—"there [was] no reason to doubt [its] … good faith," and the court granted vacatur. *Id*. Similarly, in *Dilley v. Gunn*, 64 F.3d 1365, 1372 (9th Cir. 1995), the appellant argued that the case-mooting action "was wholly unrelated to th[e] lawsuit and would have occurred in the absence of litigation." The court acknowledged that "[t]he administration of a prison does not grind to a halt the moment an inmate files a lawsuit" and that if Dilley, a prisoner, had been "transferred pursuant to prison regulations which permit an inmate to transfer to a lower security institution once he has served a specific amount of time … without substantial disciplinary problems," then the "[m]ootness resulting from such a transfer would be attributable to 'happenstance' within the meaning of *Munsingwear*, even if the defendants, as employees of the state's prison system, did play some administrative role in the transfer." *Id*. The court remanded to the district court to determine whether vacatur was warranted in light of that holding. *Id.*

As the *Dilley* court explained, "To hold otherwise might create an incentive for prison officials to hinder routine transfers that would otherwise be available to and desired by inmates who have obtained favorable but not yet reviewed judgments in the district court." *Id*. The government makes a similar argument in this case. *See* Gov. Mot. 2 ("The United States should not have to choose between either relinquishing its right to seek appellate review of the district court's judgment by removing a terrorist alien in accordance with the mandatory directives of Congress, or instead preserving its right to appellate review by keeping a terrorist in the United States and

17

potentially having to release him into the community even though three agency heads determined that he could not be safely released into the United States and even though it took years to secure a country that would accept him.").

Like the parties in *Dilley*, "[t]he [government] had a relationship to [Hassoun] other than as litigants," 64 F.3d at 1372, and the government's obligations under 8 U.S.C. § 1231(a)(1)(A) and (4)(A) did not disappear once Hassoun filed his petition for a writ of habeas corpus. Hassoun points to no evidence—beyond speculation—that the government acted for reasons other than its statutory obligation to effectuate a removal. The government "began 'engag[ing] with multiple foreign governments concerning [Hassoun's] removal'" after he was placed in immigration detention in October 2017. *Hassoun*, 2019 WL 78984, at *1; *see also Hassoun*, 427 F. Supp. 3d at 361-62 (noting that, in addition to other efforts, the government "sought travel documents for [Hassoun] from Egypt, Iraq, Somalia, Sweden, and the United Arab Emirates, as well as from three unidentified countries"). The government continued to engage in "ongoing efforts" to remove Hassoun throughout the district court proceedings, *Hassoun*, 2020 WL 3496302, at *1, and throughout this appeal.

The government's ongoing effort to comply with 8 U.S.C. § 1231(a)(1)(A) and (4)(A) was "independent of the pending lawsuit" and does not indicate that the government acted "in order to overturn an unfavorable precedent." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 351-52 (D.C. Cir. 1997); *see Khodara Envtl., Inc. ex rel. Eagle Envtl. L.P. v. Beckman*, 237 F.3d 186, 195 (3d Cir. 2001); *Ford v. Wilder*, 469 F.3d 500, 507 (6th Cir. 2006) (Rogers, J., concurring) ("[T]here simply is no evidence that the defendants acted with the

18

intent to moot [the] civil action against them."). This is not a case in which a party has "obtain[ed] a favorable judgment, take[n] voluntary action that moots the dispute, and then [seeks to] retain the benefit of the judgment." *Azar v. Garza*, 138 S. Ct. 1790, 1792 (2018).

In *Arevalo v. Ashcroft*, 386 F.3d 19, 20-21 (1st Cir. 2004), the court held that "[e]quitable considerations favor[ed] vacatur" of a district court ruling that "the relevant statute did not authorize ICE to detain Arevalo after the 90-day period provided by 8 U.S.C. § 1231(a) expired," even though ICE had acquiesced in another opinion of the court that had effectively mooted its appeal. The court noted that "[n]ot only did ICE vigorously pursue its appeal but, 'as a repeat player before the courts, [it] is primarily concerned with the precedential effect of the decision below,' and 'has an institutional interest in vacating adverse rulings of potential precedential value.'" *Id.* At the same time, the "petitioner [was] no longer subject to reinstatement of the removal order against her." *Id*. at 21. Accordingly, the court concluded that "vacating the judgment harms neither party and leaves the interpretation of 8 U.S.C. § 1231(a) to be litigated fully in a more appropriate case." *Id*.

Here too, the government vigorously pursued its appeal—in two courts of appeals, no less—and removed Hassoun pursuant to its obligations under 8 U.S.C. § 1231(a), as it had been attempting to do for years. It has the same institutional interests that the First Circuit identified in *Arevalo*, and Hassoun similarly will not suffer harm because he has been removed from the United States and is barred from re-entry.

Finally, the district court's decisions could have a preclusive effect in future litigation between the parties over the lawfulness of

Hassoun's detention.[6]  Accordingly, we conclude that vacatur of the district court's decisions related to 8 C.F.R. § 241.14(d) is warranted.[7]

**B**

Unlike the district court's decisions related to 8 C.F.R. § 241.14(d), this court's opinion granting the government's motion for a stay pending appeal does not "spawn[] any legal consequences" for the parties. *Munsingwear*, 340 U.S. at 41.

"[O]rders concerning stays are 'not a final adjudication of the merits of the appeal' and accordingly have 'no res judicata' effect." *Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 795 (11th Cir. 2020); *see Hand v. Desantis*, 946 F.3d 1272, 1275 n.5 (11th Cir. 2020); *FTC v. Food Town Stores, Inc.*, 547 F.2d 247, 249 (4th Cir. 1977) ("An order has no res judicata significance unless it is a final

---

[6]  *See, e.g.*, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (giving preclusive effect to rulings on issues litigated in a prior habeas proceeding); *Burgos v. Hopkins*, 14 F.3d 787, 793 (2d Cir. 1994) (same); *cf. Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir. 1987) ("Litigation involving the government is generally binding with respect to governmental officials who are sued in their official capacities in later actions.").

[7]  *See, e.g.*, *Hassoun v. Searls*, No. 19-CV-370, 2020 WL 3496302, at *7-11 (W.D.N.Y. June 29, 2020); *Hassoun v. Searls*, 427 F. Supp. 3d 357, 366 (W.D.N.Y. 2019). We vacate the district court's decisions—that is, its judgment and its opinions—insofar as the court addressed the validity of 8 C.F.R. § 241.14(d). *See Camreta v. Greene*, 563 U.S. 692, 698 (2011) (vacating "the part of the [lower court's] opinion that decided the [mooted] issue"); *Arave v. Hoffman*, 552 U.S. 117, 118 (2008) ("[W]e vacate the judgment of the Court of Appeals to the extent that it addressed that claim."); *Selig v. Pediatric Specialty Care, Inc.*, 551 U.S. 1142, 1142 (2007) ("Judgment vacated with respect to the individual capacity claims … and case remanded … with instructions to dismiss the appeal as moot with respect to these claims.").

adjudication of the merits of an issue."). For that reason, "vacatur of a prior stay-panel opinion once a case becomes moot on appeal is inappropriate—precisely because that stay-panel opinion cannot spawn binding legal consequences regarding the merits of the case." *Democratic Exec. Comm. of Fla.*, 950 F.3d at 795; *see also SEC v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 161 (2d Cir. 2012) ("The merits panel is, of course, free to resolve all issues without preclusive effect from this ruling.").

Hassoun suggests that this conclusion "very well may not be true of the panel's jurisdictional pronouncement in this case." Hassoun Mot. 21. To the extent Hassoun suggests that the precedential status of a motion panel's jurisdictional ruling differs from its rulings on other issues, that is mistaken. "[N]early every … Circuit," including this one, has held that a merits panel "may revisit [a] motions panel's decision on jurisdiction." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999) (citing cases); *see also E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1264-66 (9th Cir. 2020) (noting that a motions panel's jurisdictional ruling is "persuasive, but not binding").

Moreover, jurisdictional decisions are an ordinary feature of every case. "[B]efore deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001). Although a jurisdictional decision may "preclude relitigation of the issues determined in ruling on the jurisdiction question,"[8] such

---

[8] 18A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4436 (3d ed. 2004); *see also Roth*, 316 F.2d at 145.

preclusion is limited to "the *precise issue* of jurisdiction," *GAF Corp. v. United States*, 818 F.2d 901, 912 (D.C. Cir. 1987) (emphasis added). As Hassoun admits, "[t]here is no realistic probability that [he] could in the future be in a position to allege that he had been injured by the regulation" because "he is in a foreign country and is forever barred from entry into the United States." Hassoun Opp'n 14 (quoting Gov't Mot. 13). Accordingly, there is no realistic probability that the court's jurisdictional decision will spawn legal consequences for Hassoun and vacatur of the court's order is thus inappropriate. *See Mahoney v. Babbitt*, 113 F.3d 219, 224 (D.C. Cir. 1997) ("In the unlikely event that these same parties again face each other in litigation involving a claim of issue preclusion based on this litigation, then that preliminary stage of this litigation would be a factor for the future court to weigh in evaluating that argument.").

Because there are no legal consequences of the court's opinion for the parties, in terms of preclusion or even precedent, vacatur is inappropriate. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp Mortg. Co.*, 513 U.S. at 26. Vacatur pursuant to *Munsingwear* is an exception to the regular procedure for establishing and revising precedents. *Id.* at 27. Where *Munsingwear* does not apply, because a "decision poses little risk of prejudice to the parties," the "heavy weight" of precedent and regular procedure "greatly exceeds the light, if existent, danger of unfair preclusive effect." *Mahoney v.*

22

*Babbitt*, 113 F.3d 219, 224 (D.C. Cir. 1997); *see also 10 Ellicott Square Ct. Corp. v. Mt. Valley Indem. Co.*, 634 F.3d 112, 115 n.1 (2d Cir. 2011).[9]

## CONCLUSION

For the foregoing reasons, we **DENY** Hassoun's motion to vacate this court's opinion granting the government's motion for a stay pending appeal, and we **GRANT** the government's motion to **VACATE** the district court's decisions related to 8 C.F.R. § 241.14(d), **DISMISS** this appeal as moot, and **REMAND** to the district court with instructions to dismiss Hassoun's challenge to his detention under 8 C.F.R. § 241.14(d) as moot.

Any other pending motions are denied as moot.

---

[9] Hassoun points to *Azar v. Garza*, 138 S. Ct. 1790 (2018), as contrary authority. In that case, however, it was "undisputed that Garza and her lawyers prevailed in the D.C. Circuit, took voluntary, unilateral action to have Doe undergo an abortion sooner than initially expected, and thus retained the benefit of that favorable judgment." *Id.* at 1793. The Court agreed with the government that the judgment provided a "benefit" to Garza in the form of legal consequences. *Id.*; *see* Reply Brief for Petr's at 7, *Azar v. Garza*, 138 S. Ct. 1790 (2018) (No. 17-654) ("Absent vacatur, the decision will be binding within that circuit with respect to future requests for similar preliminary relief … and it plainly will have significant influence on permanent relief in this case and others. These are legal consequences that the government should not, in fairness, be forced to suffer."). This case, for the reasons stated in Part II.A., did not become moot through the voluntary, unilateral action of the prevailing party and, for the reasons stated in Part II.B., does not have legal consequences for the parties.

23